JUDGE JONES

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LEONARD ZINNANTI, GABRIELLA FALDINI,
ALEXIS ARAK, LATASHA MERCER, MELISSA
KLEIN, NATASHA DIAMOND-WALKER, NICOLE
HERMAN, ISMAEL ROSAS VEGA, JOSE LUIS
CORDOBA, LUIS CUATENCOS, LEOCADIO
MEDINA, LOURDES VILLEGAS, RAMON
ALATORRE, RAUL CORDERO, ROBERT
CHRISTMAN, ROBERTO BETANZOS, SARAH
BREGA, TAINA TORRES-WIRTH, TAYLOR
VALENTINE, VICTOR SORIANO, SERGIO
VILCHES, and DAVID HERNANDEZ, *individually
and on behalf of others similarly situated*,
                                              *Plaintiffs*,

        -against-

THE BRIER GROUP, LLC, GREG BRIER,
MATTHEW TORTOSO, and DAR NAZIEM
                                *Defendants.*
-----------------------------------------------------------------X

**COMPLAINT**

**FLSA Collective Action**

        Plaintiffs, individually and on behalf of others similarly situated, by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, as against

Defendants The Brier Group, LLC (the "Brier Group), Greg Brier ("Brier"), Matthew Tortoso

("Tortoso"), and Dar Naziem ("Naziem"), allege as follows:

## NATURE OF THE ACTION

        1.      Plaintiffs are former employees of Defendants and restaurants owned by

Defendants.

        2.      At times relevant to this matter, Defendants owned and operated the following

restaurants and lounges (collectively the "Brier Group Restaurants") in Manhattan:

1

    a.   Defendant Amalia Restaurant ("Amalia"), which was located at 204 West 55th Street,

    b.   Defendant Aspen Restaurant and Lounge ("Aspen"), which was located at 30 West 22nd Street

    c.   D'Or Lounge ("D'Or"), which was located at 204 W. 55th St,

    d.   Defendant Aspen Social Club ("Aspen Social"), located at 157 West 47th Street, and

    e.   Defendant Highbar, located at 251 West 48th Street.

3.    Aspen closed in or about December 2009.

4.    D'Or closed in or about March 2010.

5.    Amalia closed in or about March 2010.

6.    Defendants have maintained a policy and practice of failing to pay Plaintiffs and other similarly situated employees the minimum wage and overtime compensation required by federal and state law and regulations.  Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

7.    In addition, Defendants failed to pay wages and credit card tips for much of the eight-month period prior Aspen's closing.

8.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, to recover unpaid tips and wages, unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP.

CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

9.     Plaintiffs seeks certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 201 *et seq.*; and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

11.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.  The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two bagel shops located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

12.     Plaintiff Leonard Zinnanti is an adult individual residing in Richmond County, New York.

13.     Plaintiff Gabriella Faldini is an adult individual residing in New York County, New York.

14.     Plaintiff Alexis Arak is an adult individual residing in Hudson County, New Jersey.

3

15.   Plaintiff Latasha Mercer is an adult individual residing in Queens County, New York.

16.   Plaintiff Melissa Klein is an adult individual residing in Kings County, New York.

17.   Plaintiff Natasha Diamond-Walker is an adult individual residing in Kings County, New York.

18.   Plaintiff Nicole Herman is an adult individual residing in Queens County, New York.

19.   Plaintiff Ismael Rosas Vega is an adult individual residing in Queens County, New York.

20.   Plaintiff Jose Luis Cordoba is an adult individual residing in Queens County, New York.

21.   Plaintiff Luis Cuatencos is an adult individual residing in Bronx County, New York.

22.   Plaintiff Leocadio Medina is an adult individual residing in Bronx County, New York.

23.   Plaintiff Lourdes Villegas is an adult individual residing in Kings County, New York.

24.   Plaintiff Ramon Alatorre is an adult individual residing in Hudson County, New Jersey.

25.   Plaintiff Raul Cordero is an adult individual residing in Hudson County, New Jersey.

26.     Plaintiff Robert Christman is an adult individual residing in New York County, New York.

27.     Plaintiff Roberto Betanzos is an adult individual residing in Queens County, New York.

28.     Plaintiff Sarah Brega is an adult individual residing in New York County, New York.

29.     Plaintiff Taina Torres-Wirth is an adult individual residing in Essex County, New Jersey.

30.     Plaintiff Taylor Valentine is an adult individual residing in Queens County, New York.

31.     Plaintiff Victor Soriano is an adult individual residing in Queens County, New York.

32.     Plaintiff David Hernandez is an adult individual residing in Bronx County, New York.

33.     Plaintiff Sergio Vilches is an adult individual residing in New York County, New York.

*Defendants*

34.     Upon information and belief, Defendant The Brier Group is a domestic limited liability company organized and existing in New York State.

35.     Upon information and belief, The Brier Group maintains its principle place of business at 157 West 47th Street, and/or 251 West 48th Street, New York, New York.

36.     Upon information and belief, Defendant Brier is an individual engaged in business in New York City; Defendant Brier is sued individually and in his capacity as an owner, officer and/or agent of the Aspen and as an owner, officer and/or agent of The Brier Group.

37.     Upon information and belief, Defendant Tortoso is an individual engaged in business in New York City; Defendant Tortoso is sued individually and in his capacity as an owner, officer and/or agent of the Aspen and as an owner, officer and/or agent of The Brier Group.

38.     Upon information and belief, Defendant Naziem is an individual engaged in business in New York City; Defendant Naziem is sued individually and in his capacity as an owner, officer and/or agent of the Aspen and as an owner, officer and/or agent of The Brier Group.

## FACTUAL ALLEGATIONS

### *Defendants General Employment Practices*

39.     Defendants paid bartenders, waitresses, and other employees of Aspen less than the minimum wage.

40.     Defendants were not entitled to take a "tip credit" toward the minimum wage because (a) Defendants did not provide Plaintiffs with adequate notice of the tip credit provisions, (b) Defendants did not permit Plaintiffs to retain all tips received from customers, and (c) Defendants did not maintain required tip credit records.

41.     Defendants failed to pay proper overtime rates to employees who worked in excess of 40 hours per week.

42.     Defendants purposefully altered time records to make it appear that employees worked fewer than 40 hours per week, in an attempt to avoid paying overtime.

43.   Defendants never paid an extra hour's pay as "spread of hours" wages to plaintiffs whose spread of hours exceeded ten in a given day.

44.   Defendants did not pay hourly employees for all hours worked.

45.   Defendants willfully and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete time and payroll records.

46.   Beginning in or about May 2009, Defendants stopped making regular wage and salary payments to employees, and stopped paying employees all tips they had earned from customers that paid by credit card.

47.   Defendants promised Plaintiffs that they would be paid all of the wages owed once business increased over the holiday season.  However, Defendants closed Aspen in December, and Plaintiffs never received the additional pay they are owed.

48.   When customers rented out space for private parties at Aspen or other Brier Group Restaurants, Defendants did not pay Plaintiffs and other staff members their portions of the tips left by the customers.

49.   Paychecks issued by Defendants frequently "bounced" due to insufficient funds in Defendants' accounts.

*Defendants Are Joint Employers*

50.   Defendants are joint and associated employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

51.   Each month, the general managers of all Brier Group Restaurants met owner Greg Brier and his second-in-command, Holly Roberts.

52.   Managers and hostesses at Aspen, including Plaintiff Zinnanti, took reservations for other Brier Group Restaurants on a daily basis.

53.   The various Brier Group Restaurants would also frequently exchange and share liquor, plates, and other restaurant supplies.

54.   At least two times per month, private parties booked at one Brier Group Restaurant would be reassigned to another Brier Group Restaurant due to scheduling conflicts.

55.   Staff from one Brier Group Restaurant were often required to work at another Brier Group Restaurant according to their staffing needs.

56.   Defendants possess or possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

57.   Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and were their employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

58.   In the alternative, the Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

59.   The gross annual volume of sales made or business done by Defendants and Aspen, for each year in existence, was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

60.   At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

*Plaintiff Leonard Zinnanti*

61.     .Zinnanti was employed by Defendants as a general manager of Aspen from approximately October 2008 through December 2009.

62.     Zinnanti was paid a weekly salary of approximately $1295.  However, Defendants failed to pay his weekly salary from approximately May 2009 through the end of his employment with Defendants.  Zinnanti is therefore owed approximately $30,000 in unpaid wages.

63.     Zinnanti was required to spend approximately $3,000 of his own money to purchase liquor for Defendants' restaurants.

64.     In addition, Zinnanti paid approximately $2,000 of his own money to pay cleaners and employees at Defendants' restaurants.

65.     Zinnanti's employment contract with Defendants provided that he was to receive health insurance benefits and two weeks of paid vacation per year.  However, Zinnanti never received health insurance benefits or vacation pay.

*Plaintiff Gabriella Faldini*

66.     Faldini was employed by Defendants as a floor manager at Aspen from approximately June 10, 2006 through December 1, 2009.

67.     Faldini handled general manager duties when Zinnanti was not working, and also worked as a waitress at Aspen on weekends.

68.     Faldini was paid approximately $150 per shift when she worked as a manager. However, Defendants did not pay her for approximately 10 shifts between June 2009 and November 2009.  Therefore, Faldini is owed approximately $1500 in unpaid wages as a manager.

9

69.     Faldini was paid $4.60 per hour when she worked as a waitress, from approximately 4:30 pm to 12:30 am each Friday and Saturday.  However, Defendants failed to pay her hourly wages from May 2009 through the end of her employment.  Therefore, Faldini is owed approximately $2,208 (8 hours per day for 60 days at $4.60 per hour) in unpaid wages as a waitress.

70.     Defendants failed to pay Faldini amounts she earned as credit card tips from customers from May to November 2009.  Faldini is owed approximately $1798 in unpaid credit card tips.

71.     Three of the paychecks Faldini received from Defendants "bounced" due to insufficient funds.  The total amount of the three checks was approximately $1053.46.

*Plaintiff Alexis Arak*

72.     Arak was employed by Defendants as a server and cocktail waitress at Aspen from approximately September 2008 through December 2009.

73.     Arak's scheduled work hours were 4:30 pm to 11:00 pm on two or three weekdays per week, and 9:00 pm to 4:00 am Saturdays.  She was paid at a rate of $92 or $120 per week, depending upon whether she worked 3 or 4 days in a given week.

74.     Defendants failed to pay Arak any wages beginning approximately May 2009 through the end of her employment.

75.     In addition, Defendants failed to pay Arak approximately $1593 in credit card tips that she earned from customers from May 2009 through the end of her employment.

*Plaintiff Latasha Mercer*

76.     Mercer was employed by Defendants as a hostess, waitress, and cocktail server at Aspen from approximately July 2007 through December 2009.

10

77.   Defendants failed to pay Mercer over $700 in credit card tips.

78.   Two of the paychecks Mercer received from Defendants "bounced" due to insufficient funds.  The total amount of the checks was approximately $230.

### Plaintiff Melissa Klein

79.   Klein was employed by Defendants as a waitress at Aspen from January 2009 through December 2009.

80.   Klein's scheduled work hours were 4:00 pm to 12:00 am Wednesday, Thursday and Saturday.  Beginning in or about May 2009, she worked only 1 or 2 of those days per week. She was paid at a rate of $4.60 per hour.

81.   From approximately May 2009 through the end of her employment, Klein was not paid by defendants.

82.   Defendants also failed to pay Klein any credit card tips earned from customers from May 2009 through the end of her employment.

83.   Defendants also failed to pay Klein her portion of tips received for four private parties.

### Plaintiff Natasha Diamond-Walker

84.   Diamond-Walker was employed by Defendants as a waitress and server at Aspen from approximately August 2008 through December 2009.

85.   Diamond-Walker's scheduled work hours were 9:00 pm to 4:00 am Fridays, Saturdays, and Sundays.  She also worked from 4:00 pm to 11:00 pm on Wednesdays or Thursdays on approximately 20 occasions.  She was paid at a rate of $4.60 per hour.

86.   Diamond-Walker was not paid by Defendants from approximately May 2009 through the end of her employment.

11

87.    Defendants also failed to pay Diamond-Walker approximately $850 in credit card and party tips from May 2009 through the end of her employment.

*Plaintiff Nicole Herman*

88.    Herman was employed by Defendants as a bartender at Aspen from approximately August 2006 through December 2009.

89.    Herman's scheduled work hours were 4:30 pm to between 1:00 am and 4:00 am two or three days per week.  She was paid at a rate of $4.60 per hour.

90.    Herman was not paid by Defendants from approximately May 2009 through December 2009.

91.    Defendants also failed to pay Herman approximately $4057.95 in credit card tips earned and failed to pay her portion of tips from a Christmas party in December 2009.

*Plaintiff Ismael Rosas Vega*

92.    Vega was employed by Defendants as a food preparation worker from approximately October 2007 through December 2009.

93.    From approximately October 2007 through January 2007, Vega's work scheduled was 3:00 pm to 11:00 pm five days per week, with Tuesdays and Sundays off.  He was paid at a rate of $8.50 per hour.

94.    From approximately December 2007 to August 2008, Vega's work schedule was 4:00 pm to 12:00 am five days per week, with Tuesdays and Sundays off.  He was paid at a rate of $9 per hour.

95.    From approximately September 2008 through September 2009, Vega's work schedule was 10:00 am to 12:00 am five days per week, with Tuesdays and Sundays off.  He was

paid at a rate of $9 per hour for shifts between 10:00 am to 4:00 pm, and $10.50 per hour for shifts between 4:00 pm and 12:00 am.

96.   From approximately September 2009 through the end of his employment, Vega's work schedule was 12:00 pm to 12:00 am five days per week, with Tuesdays and Sundays off. He was paid at a rate of $9 per hour for shifts between 12:00 pm to 4:00 pm, and $10.50 per hour for shifts between 4:00 pm and 12:00 am.

97.   Vega was frequently required to begin work prior to his scheduled hours, stay later than his scheduled hours, and work on his scheduled days off without additional pay.

98.   Two of the paychecks Vega received from Defendants "bounced" due to insufficient funds.  The total amount of the checks was approximately $720.

*Plaintiff Jose Luis Cordoba*

99.   Cordoba was employed by Defendants as a cook and food preparation worker from approximately September 2007 through December 2009.

100.   Cordoba was scheduled to work a "morning shift" from 11:30 am to 4:30 pm, and an "afternoon shift" from 4:30 pm to 12:00 am.  He worked the morning shift 4-6 days per week, and worked the afternoon shift 6 days per week, with Sundays off.  He was paid $11 per hour for the morning shift under the name Jose Hernandez, and $12 per hour for the afternoon shift under the name Jose Luis Cordoba.

101.   Cordoba was required to enter two different employee numbers in the computer for timekeeping purposes—one for the morning shift corresponding to the name Jose Hernandez and one for the afternoon shift corresponding to the name Jose Luis Cordoba.

102.   Cordoba was not paid for approximately 4 weeks at the end of his period of employment.  In addition, at least five paychecks he received from Defendants "bounced" due to insufficient funds.

*Plaintiff Luis Cuatencos*

103.   Cuatencos was employed by Defendants as a line cook at Aspen from approximately November 2007 through December 2009.

104.   From approximately November 2007 through June 2009, Cuatencos was scheduled to work from 5:00 pm to 12:00 am five days per week, with Sundays and Mondays off.  He was paid at a rate of $12 per hour.

105.   From approximately June 2009 through December 2009, Cuatencos was scheduled to work from 4:00 pm to 12:00 am five days per week, with Sundays and Mondays off.  He was paid at a rate of $14 per hour.

106.   Two of the paychecks Cuatencos received from Defendants "bounced" due to insufficient funds.  The total amount of the checks was approximately $640.

*Plaintiff Leocadio Medina*

107.   Medina was employed by Defendants as a dishwasher and food preparer at Aspen from approximately January 5, 2008 through December 5, 2009.

108.   From approximately January 5, 2008 through April 2008, Medina was scheduled to work from 4:00 pm to 1:00 am Monday through Thursday, and from 4:00 pm to 3:00 or 4:00 am on Fridays and Saturdays.  He was paid at a rate of $8.50 per hour.

109.   From approximately May 2008 through December 2008, Medina was scheduled to work the same as above plus a "morning shift" from 6:00 am to 4:00 pm every day except

Wednesday.  He was paid at a rate of $8.50 per hour.  He was required to work under the name

Francisco Peralta for the morning shift and under the name Leocadio Medina for other shift.

110.    Two of the paychecks Medina received from Defendants "bounced" due to

insufficient funds.  The total amount of the checks was approximately $602.84.

111.    Medina received no pay from Defendants for approximately 6 weeks of his

employment.

*Plaintiff Lourdes Villegas*

112.    Villegas was employed by Defendants as a cleaner and decorator at Aspen from

approximately November 2008 through December 2009.

113.    From approximately November 2008 through June 2009, Villegas worked from

approximately 9:00 am to 4:00 pm six days per week, with Sundays off.  She was paid $300 cash

each week.

114.    From approximately June 2009 through December 2009, Villegas worked from

approximately 2:00 pm to 7:00 pm Thursday through Saturday.  She was paid $100 cash per day.

In addition, on approximately six occasions she worked an additional day from 9:00 am to 5:00

pm, and was paid only $20 or $30 cash for that additional day.

115.    Villegas received no pay from Defendants for approximately 3 weeks of her

employment (approximately $900).

*Plaintiff Ramon Alatorre*

116.    Alatorre was employed by Defendants as a food runner from approximately 2005

through December 2009.

117.   From approximately 2005 through 2006, Alatorre's scheduled work hours were 4:00 pm to 11:00 pm Wednesdays and Thursdays, 4:00 pm to 12:00 am Fridays, and 4:00 pm to 4:00 am Saturdays.

118.   From approximately 2007 through December 2009, Alatorre's scheduled work hours were 4:30 pm to 11:30 pm Mondays through Thursdays, and 4:30 pm to 4:00 am Fridays and Saturdays.  He was paid at a rate of $4.60 per hour.

119.   Alatorre only received four paychecks for the period from April 2009 through the end of his employment.

120.   Alatorre was not paid his portion of credit card tips from May 2009 through the end of his employment.  Alatorre was entitled to over $3200 in credit card tips for that period of time.

121.   Alatorre also did not receive his share (approximately $150-200 each) of tips for four private parties.

*Plaintiff Raul Cordero*

122.   Cordero was employed by Defendants as a bus boy at Aspen from approximately January 2008 through December 2009.

123.   Cordero's scheduled work hours were 4:30 pm to 1:00 am on Wednesdays and Thursdays, and 4:30 pm to 4:00 am on Fridays and Saturdays.  He was paid at a rate of $4.60 per hour.

124.   From approximately May 2009 through the end of his employment, Cordero received no pay from Defendants except for two weeks' pay at the end of November.

125.   Defendants did not pay Cordero his portion of credit card tips from May 2009 through the end of his employment.  Cordero was entitled to approximately $1300 in credit card tips for that period of time.

126.   Cordero also did not receive his share (approximately $150-200 each) of tips for five private parties.

*Plaintiff Robert Christman*

127.   Christman was employed by Defendants as a bartender at Aspen from approximately May 2009 through December 2009.

128.   Christman worked 12-hour shifts at various times, ranging from one to five shifts per week.

129.   Christman was supposed to be paid by Defendants at a rate of $4.60 per hour, but he never received this pay.

130.   Defendants did not pay Christman any of the credit card tips he earned from August through December 2009.  He is owed approximately $2600 in unpaid tips.

*Plaintiff Roberto Betanzos*

131.   Betanzos was employed by Defendants as a chef from approximately September 10, 2007 through December 2009.

132.   Under his employment contract with Defendants, Betanzos was entitled to bonuses of $500 per month if net food revenue was $25,000 or more for the month, $500 if food cost was below 29% for the month, and an additional $500 if food cost wass below 26% for the month.

133.   Upon information and belief, the food revenue and food cost bonus conditions were met during all or most months of Betanzos's employment.  However, Betanzos never received a bonus from Defendants.

134.   Defendants did not pay Betanzos for his last week of employment.

*Plaintiff Sarah Brega*

135.   Brega was employed by Defendants as a waitress from approximately October 31, 2009 through December 23, 2009.

136.   Brega worked 7 hours per night, 3 nights per week for 8 weeks.  She was paid at a rate of $4.60 per hour.

137.   Defendants only paid Brega for two weeks, and she is therefore owed base pay for six weeks.

138.   Defendants failed to pay Brega approximately $1300 in credit card tips she earned, and failed to pay Brega her portion of the tips from two private parties.

*Plaintiff Taina Torres-Wirth*

139.   Torres-Wirth was employed by Defendants as a bartender from approximately 2008 through December 2009.

140.   Torres-Wirth worked 8-12 hour shifts one or two days per week.  She was paid from $75 to $125 per week.

141.   Torres-Wirth's paychecks did not reflect all of the hours that she actually worked.

142.   From approximately June 2009 through the end of her employment, Torres-Wirth received no pay from Defendants.

143.   Defendants failed to pay Torres-Wirth approximately $1947 in credit card tips she earned, and failed to pay her portion of the tips from two private parties (approximately $100 each).

*Plaintiff Taylor Valentine*

144.   Valentine was employed by Defendants as a waiter from approximately May 2008 through December 2009.

145.   Valentine was paid for approximately 20 hours per week at a rate of $4.60 per hour.

146.   From approximately May 2009 through the end of his employment, Valentine received no pay from Defendants.

147.   Defendants failed to pay Valentine approximately $1060 in credit card tips he earned from approximately September through December 2009.

*Plaintiff Victor Soriano*

148.   Soriano was employed by Defendants as a Cook from approximately June 8, 2009 through December 14, 2009, under the name Victor Zuniga.

149.   Soriano's scheduled work hours were 4:00 pm to 12:00 am five days per week, with Sundays and Mondays off.  He was paid at a rate of $14 per hour.

150.   Soriano did not receive pay from Defendants for a period of four weeks.  He is owed approximately $2,240 ($560 per week for four weeks).

*Plaintiff Sergio Vilches*

151.   Vilches was employed by Defendants as a porter from approximately June 2006 through December 2009.

152.    Vilches's worked from approximately 7:30 am to 3:30 pm Mondays through Saturdays.  He was paid $500 per week.

153.    Vilches did not receive pay from Defendants for a period of seven weeks.  He is owed approximately $3,500 ($500 per week for seven weeks).

*Plaintiff David Hernandez*

154.    Hernandez was employed by Defendants as a barback from approximately June 2006 through December 2009.

155.    Hernandez worked from approximately 4:00 pm to 2:00 am Wednesdays and Thursdays, and 4:00 pm to 6:00 am Fridays and Saturdays.  He was paid $350 per week.

156.    Hernandez did not receive pay from Defendants from approximately May 2009 through December 2009.

157.    Defendants failed to pay Hernandez approximately $3900 in credit card tips he earned, and failed to pay her portion of the tips from 12 private parties (approximately $200 each).

## FLSA COLLECTIVE ACTION CLAIMS

158.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

159.    At all relevant times, Plaintiffs, and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols

and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation.

162.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

163.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

164.    Defendants failed to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

165.    Defendants' failure to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

166.    Plaintiffs and the FLSA Class members have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

167.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.    Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

169.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

170.    Plaintiffs have been damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)**

171.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation.

173.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

174.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

175.    Plaintiffs have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK LABOR LAW)**

176.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.   Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

178.   Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

179.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

180.   Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER)

181.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

182.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 and 137-3.11.

183.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

184.   Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (BREACH OF CONTRACT as to Plaintiffs Zinnanti and Betanzos)

185.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

186.   Defendants entered into written agreements with Zinnanti and Betanzos with respect to the amounts they were to be paid.

187.   Zinnanti and Betanzos performed all of their obligations under the contract.

188.   Defendants breached the contracts by failing to pay Zinnanti and Betanzos all compensation due under the contract.

189.   As a result of Defendants' breach, Zinnanti and Betanzos have suffered damages in amounts to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(BREACH OF IMPLIED CONTRACT)**

190.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

191.   Defendants promised to pay plaintiffs for all hours that they worked.

192.   When Plaintiffs were performing their respective work duties, Defendants knew that the Plaintiffs were performing duties for the benefit of Defendants and that Plaintiffs expected to receive compensation for their work.

193.   Defendants accepted and received the benefits of the work, labor, and services performed by Plaintiffs.

194.   Defendants breached an implied contract with Plaintiffs by failing to pay them for certain time periods as set forth above.

195.   As a result of Defendants' breach, Plaintiffs have suffered damages in amounts to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(UNJUST ENRICHMENT / DETRIMENTAL RELIANCE / PROMISSORY ESTOPPEL)**

196.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

24

197.    Plaintiffs relied on the promises set forth herein in performing additional services for Defendants and foregoing other opportunities.

198.    Defendants knew or reasonably expected that Plaintiffs would act or refrain from acting in reliance upon Defendants' promises.

199.    Defendants were enriched by Plaintiffs continued performance of services.

200.    If Plaintiffs are not compensated, Defendants will obtain the benefits of Plaintiffs' services without adequately compensating Plaintiffs, and it is against equity and public policy to permit Defendants to retain the amounts Plaintiffs seek to recover.

201.    As a result of Defendants' actions, Plaintiffs have suffered damages in amounts to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFOR, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

A.    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all FLSA Class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

B.    Declaring that Defendants have violated the minimum wage orders of the FLSA and NYLL;

C.    Declaring that Defendants have violated the overtime wage orders of the FLSA and NYLL;

D.    Declaring that Defendants' violation of the FLSA and NYLL were willful;

E.    Declaring that Defendants have violated the Spread of Hours Wage Order of the

25

New York Commissioner of Labor, as to Plaintiffs and FLSA Class members whose spread of hours exceeded ten;

  F. Awarding Plaintiffs and FLSA Class members damages in the amounts of unpaid wages, unpaid credit card tips, unpaid private party tips, and amounts paid by Plaintiffs for the benefit of Defendants;

  G. Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum and overtime wages, as well as spread of hours pay under the FLSA and NYLL;

  H. Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to minimum and overtime wage orders, as well as the spread of hours pay pursuant to 29 U.S.C. § 216(b);

  I. Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663;

  J. Awarding Plaintiffs and the FLSA Class members prejudgment interest;

  K. Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorney's fees; and

  L. Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
   June 8, 2010

       MICHAEL FAILLACE & ASSOCIATES, P.C.

       By: _____
         Michael Faillace [MF-8436]
         110 East 59th Street, 32nd Floor
         New York, New York 10022
         (212) 317-1200
         *Attorneys for Plaintiffs*